# SUPREME COURT OF PENNSYLVANIA.

### THE BOROUGH OF PITTSTON vs. HART.

1. A horse is liable to fright, and those having charge of public highways should make reasonable provisions against accident from a cause so common, and so likely to occur.

2. A precipice by the side of a narrow street requires fencing quite as much as the sides of a bridge.

3. Where horses running away on the public highway fell over an ungarded precipice by the side of the road, HELD, the negligence of the borough authorities was the proximate cause of the accident.

Error to the Court of Common Pleas of Luzerne county. Opinion by GORDON, J.   May 7, 1876.

The verdict and evidence in this case establish the following facts:  Pittston is a large borough, having a population of some eight or ten thousand, and the street upon which this runaway happened is the main one of the town, and whilst its general width is some sixty-six feet, it narrows to a width of thirty-six feet, including the sidewalk, at the place of the accident.  On the west side, and at the point mentioned, some twelve feet lower than the street, is the Lehigh Valley Railroad, from the track of which up to a level with said street is a perpendicular stone wall, built, no doubt, for the protection of the railroad.  Notwithstanding the circumstances as above narrated made this a notoriously dangerous place, yet this part of the street was protected by neither fence, guard, wall, or curb.  On the 7th of May, 1875, the plaintiff's two-horse team, in charge of his son, a boy of eighteen years of age, was quietly, and under full control of the driver, passing along the way above described, when the horses took fright from an approaching locomotive, which, as the boy said, by reason of the curve in the road, seemed to be coming down the street, and in spite of the efforts of the driver rushed across the street and over the wall above described.  The result was, one horse killed, the other hurt, the wagon and harness broken, and the boy badly injured.

Complaint is made that the court below suffered the

jury to pass upon the question, whether the borough offi
cers were negligent in permitting this precipice to remain
unfenced, and whether the plaintiff's loss resulted from
that neglect. But we do not see how the court could
have refused so to do. The accident happened directly
from the want of a barrier between the street and the
curb. The driver was not in fault; he managed his team
as well as he could under the circumstances, but he had
so little of either time or space in which to control and
quiet his horses, that his efforts were unavailing. It is
true that without the frightning of the horses there would
have been no accident, but the horse is naturally a timid
animal, and is so liable to fright that those having charge
of the public highways ought to make reasonable provis-
ion for a matter so common and so likely to happen at
any time. Horses abound, but horses that never frighten,
or are never fractious, are exceedingly rare, and if roads
were to be constructed only for such animals, there must
need be but little traveling upon them. We think it
was well said in the case of Lower Macungie Township
vs. Merkhoffer, 21 P. F. S. 276, that it was no defense
that by careful driving the accident might have been
avoided, since that would fall far short of the purpose of
a public highway. In the case of Newlin Township vs.
Davis, 27 P. F. S. 317, the accident occurred through the
fright of a horse upon a bridge unprotected by side rail-
ings, but it was not in that case pretended that the omis-
sion of such railing was not *per se* neglect, or that the
fright of the horse relieved the township of liability. Now
it is hard to understand why a precipice at the side of a
narrow street does not require fencing quite as much as
the sides of a bridge. Such, in fact, is the very point in
Macungie vs. Merkhoffer, for there it was held that the
township was bound to fill up, or fence off, a dangerous
excavation at the side of a public road. We can readily
understand and excuse the want of precautions of this
kind in wild and sparsely settled portions of the state, for
the finances of the township are exhausted in the making

of roads even of an inferior character; but we can neither understand nor excuse the motive of a borough, of ten thousand inhabitants, in refusing to properly guard a place on its main thoroughfare so dangerous as that now under consideration, especially when the expense of so doing would be but trifling. In Hay vs. Philadelphia City, 31 P. F. S. 44, we have a much stronger case for the defense than the one in hand for there the roadway was of good width, and at least partially protected by the sidewalk and curb; besides this, the driver had left his seat by jumping from the buggy—the horse had torn away from him—and it was whilst in its undirected flight that it went over the river bank. Here, on the other hand, we have not only the proximity of the railroad, but a very narrow and wholly unprotected street, and we have, also, the driver maintaining his seat and endeavoring to guide his team to the very last moment. There is certainly, then, but little, if any, doubt but that the negligence of the borough authorities was the direct cause of the accident complained of with its resulting damages.

Judgment affirmed.   [Tried before Judge Handley in the court below.]

C. S. Stark, for plaintiff; Strauss and Palmer, for defendant.